UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEBORAH KASCHYK,

        **Plaintiff,**

v.                                    **Case No.  8:12-cv-894-T-23TBM**

CAROLYN W. COLVIN, Acting
Commissioner of the United States
Social Security Administration,[1]

        **Defendant.**

                                  /

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of her claim for Social Security

disability benefits.  Because the decision of the Commissioner of the United States Social

Security Administration is in accordance with the correct legal standards and is otherwise

supported by substantial evidence, I recommend that it be affirmed.

A.

Plaintiff was forty-seven (47) years of age at the time of her first administrative

hearing in November 2007.  She stands 5 feet 4 inches tall and weighed 160 pounds at the

time of the hearing.  Plaintiff has a college education and past relevant work in the

commercial real estate field and most recently, in computer input.  Plaintiff applied for

---

[1]Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Colvin is substituted for Michael J. Astrue as the defendant in this lawsuit.

disability benefits in May 2008, alleging disability as of April 1, 2004,[2] by reason of lupus, stroke, cerebral vasculitis, migraines, achy joints, anxiety, fatigue and difficulty concentrating. Plaintiff's application was denied initially, upon reconsideration and after a *de novo* hearing before an Administrative Law Judge (ALJ) conducted in November 2007.  *See* (R. 481-500).[3] On appeal of that decision to this Court, the decision was reversed and remanded for the failure of the ALJ to address Plaintiff's complaints of fatigue.  *See* (R. 518-30).  In September 2009, the Appeals Council vacated the decision and remanded the case to the ALJ for further proceedings consistent with the Court's Order.  (R. 535).

The Plaintiff's administrative hearing on remand was conducted July 14, 2010.[4]  The Plaintiff was represented at the hearing by counsel and testified on her own behalf. Additionally, a vocational expert and medical expert were called by the ALJ**.**

Plaintiff testified to having worked in commercial real estate since 1984, although her license is no longer active.  She last worked part-time doing computer input in March 2005, but the stress of that job caused her headaches and blurred vision.  By her account, her lupus has worsened since her last hearing.  In her opinion, stress and fatigue prevent her from being able to work consistently.  Prior to her first stroke, she did not suffer headaches.  Since

---

[2]The alleged onset date was amended at the administrative hearing on remand to March 31, 2005.

[3]In short, the ALJ found Plaintiff capable of a limited range of light exertional work despite severe impairments related to systemic lupus erythematosus (SLE), cerebral vasculitis, GERD, chronic headaches, fatigue, valvular heart disease, osteoporosis/osteopenia, history of colon cancer-excised polypectomy.  On this finding and testimony from a vocational expert, he concluded that Plaintiff could perform her past work as a real estate agent and property management.  (R. 20-27).

[4]In May 2008, Plaintiff filed a new application for benefits.  That claim was consolidated with the claim on remand.

her stroke in 2004, she has suffered memory lapses and she gets things mixed-up.  Physical

activity is difficult because of her lupus.  While she can do things, she ends up "paying" for it.

For example, if she lifts things, later that night her hands will hurt and her joints will swell.  In

particular, lifting will result in her elbow, shoulder and wrist swelling and hurting.  If she

stands too long, her feet, ankles, knees and hips hurt.  If she does too much, she gets night

sweats and chills.  Fatigue is a major problem for her.  There are times when she is exhausted

and she just stays home and does nothing but rest.  This occurs once or twice a month.  By her

account, if she worked two days, she would need two days to recover.  She also has

diverticulitis.  When she has an attack, which usually occurs once a month, she has severe

stomach cramps and diarrhea.

On a typical day, she makes breakfast for her son and helps get him ready for school.

She does the laundry, washes the dishes and does moderate cleaning up in the kitchen area.

When doing chores, she paces herself and takes breaks.  She does not do other household

chores, nor does she grocery shop.  She drives a little each day, but she gets fatigued and has

headaches and then will need to lie down when she comes home.  Her eyes are very light-

sensitive.  Her medications are pretty stabilized, but she gets some stomach issues and dry-

mouth.  (R. 1106-15).

Dr. Owen Linder was called as a medical expert (ME).  By his account, medical

records indicated systemic lupus erythematous (SLE) and multiple strokes, with some

disequilibrium and poor gait stability; encephalomalacia in the posterior temporoparietal

region; polyarthralgias; GERD; anxiety; osteoporosis; and history of palpitations with

essentially normal echocardiogram.  Her conditions and symptoms did not meet or equal a

listed impairment but, in his view and in light of her anticoagulant medications, they would prevent her from performing heavy and medium exertional work.  In his view, light work was possible and despite her neurological history, Plaintiff should be able to hear and understand, remember and carry-out simple, routine, or complex work instructions.  Moreover, in his opinion, fatigue would not necessarily be expected from Plaintiff's conditions and there was nothing in the records indicating that Plaintiff suffered fatigue for a continuous period of twelve months arising from her conditions.  (R. 1098-1104).

Gerald Wili, a vocational expert (VE), testified on a hypothetical question assuming a person of Plaintiff's age, education and work experience, capable of light exertional work, with unlimited ability to push and pull with hand and foot, the ability to occasionally climb stairs, ramps, balance, bend, stoop, crouch, and crawl, but needing to avoid overhead exertional maneuvers, ladders, ropes, scaffolds, unprotected heights, and hazardous machinery.  With such limitations, the individual could perform Plaintiff's past work.  With additional limitations for standing and walking only two hours in an eight-hour day, but unlimited sitting, the VE opined such person could not do Plaintiff's past work but could do the work of an order clerk, appointment clerk and telemarketer.  If one were limited to occasional fingering, the order clerk and telemarketer jobs would be eliminated.  Even with such limitations, the jobs of assembler, surveillance monitor, and information clerk could be performed.  If Plaintiff's testimony were fully credited, she could not work.  (R. 1114-21).

Also before the ALJ were medical records outlining the Plaintiff's medical history.  These matters are addressed herein as necessary.  Plaintiff's date last insured for benefits was June 30, 2010.

By his decision of August 13, 2010, the ALJ determined that while Plaintiff has severe impairments related to history of SLE, cerebral vasculitis, valvular heart disease, osteoporosis/osteopenia, and history of colon cancer/polypectomy, she nonetheless had the residual functional capacity to perform a wide-range of light exertional work. Upon this finding, the ALJ concluded that Plaintiff could perform her past work as a real estate agent and leasing agent. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 507-16). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

B.

Entitlement to Social Security disability benefits requires the claimant establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotations omitted). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with

5

deference to the factual findings, no such deference is given to the legal conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Moore*, 405 F.3d at 1211.

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

C.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff: (1) the Commissioner's credibility finding under 20 C.F.R. § 404.1529 is not based on substantial evidence because it does not address Plaintiff's complaint of fatigue; and (2) the Commissioner's finding that Plaintiff has the residual functional capacity to return to her past relevant work as a real estate agent and leasing agent is not based on substantial evidence. (Doc. 13).

6

More particularly, on the first claim, she criticizes the opinion evidence from the ME, Dr. Linder, and the ALJ's reliance on that incorrect testimony as it related to fatigue. While the witness testified that fatigue would not be a symptom a doctor would expect from a diagnosis of SLE, the listing at 14.02 suggests that severe fatigue is a primary constitutional symptom of the condition. Moreover, the ALJ erred by his selective reliance upon and mischaracterization of the medical record. In particular, he ALJ overlooked Plaintiff's complaints of fatigue (R. 586, 595, 609, 614-15, 627, 691), evidence supporting her claim of fatigue in notes from Dr. Bass (R. 691) and Dr. Ledoux-Colon (R. 853, 855, 858, 860, 864, 1013, 1021-22). The ALJ also failed to consider her assertion that her fatigue becomes severe only after she is active. Even sedentary work would cause her to be fatigued to the point of needing at least one day off. Finally, the ALJ overlooked the opinions of Plaintiff's treating rheumatologist, Dr. Joel Silverfield, as to her functional capacity (R. 925-928A). In sum, the ALJ's credibility finding is not based on substantial evidence. (Doc. 13 at 8-16).

In response, the Commissioner argues that the ALJ properly evaluated her subjective complaints in accordance with the applicable standard and stated several reasons for discounting her complaints. Moreover, Plaintiff does not show that the listed reasons are inadequate or unsupported by substantial evidence. There was nothing improper in considering the ME's opinions and in any event, Plaintiff mischaracterizes the witness's testimony. Further, the decision reflects the ALJ's fair consideration of the medical evidence even if it did not discuss every bit of that record. Here, the ALJ is charged with the duty of resolving credibility issues and Plaintiff ultimately fails to show that the credibility finding is not supported by substantial evidence. (Doc. 16 at 4-12).

Because I find that the ALJ applied the applicable regulatory standard and stated adequate reasons for discounting Plaintiff's claims that her fatigue was so severe and continuous that she could not maintain consistent work, Plaintiff is not entitled to relief on this first claim.

In this Circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Under this standard, the claimant must show evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *See id.; Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Where such showing is made, the Regulations dictate that the ALJ then evaluate the intensity and persistence of the symptoms to determine how such limit the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c); 416.929(c). Relevant factors in this consideration include the objective medical evidence, evidence of factors that precipitate or aggravate the symptoms, medications and treatments available to alleviate the symptoms, how the symptoms affect daily activities, and past work history. 20 C.F.R. §§ 404.1529(c); 416.929(c). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Dyer*, 395 F.3d at 1210 (citing *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). Such reasons must be supported by substantial evidence and "take into account and evaluate the record as a whole." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). A reviewing court will not disturb

8

a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1562 (citing *MacGregor*, 786 F.2d at 1054).

Here, the decision reflects the ALJ's application of the applicable regulatory standard.  In this Circuit, proper application of the regulatory standard will satisfy this Circuit's pain standard.  *See Wilson v. Barnhart,* 284 F.3d 1219, 1225-26 (11th Cir. 2002). Moreover, the decision reflects the ALJ's fair understanding of Plaintiff's subjective complaints; fair consideration of the medical record; and adequate findings in support of the conclusion that Plaintiff was not fully credible and was capable of doing more than she claimed.  (R. 511-14).  Contrary to Plaintiff's argument, the credibility findings were not largely dependent on Dr. Linder's opinion testimony concerning fatigue.[5]  Nor does the decision reflect that the ALJ misconstrued or mischaracterized the record concerning fatigue. While it is unquestionably correct that the record contains reports by Plaintiff of fatigue, the ALJ did not state otherwise.  More to the point, the decision reflects that the ALJ worked his way through a very long medical record in drawing his conclusions.  My own review of this voluminous record supports that fatigue was not a constant complaint by Plaintiff and significantly, as found by the ALJ, the treating doctors' notes contain no details about or complaints of *debilitating* fatigue.  As set forth above, it is the duty of the ALJ and not of this Court to evaluate the evidence, make credibility findings and draw conclusions therefrom.

---

[5]As the decision reflects, the ALJ appears to have credited the ME's testimony that Plaintiff could do light exertional work in spite of all her limiting conditions.  This conclusion was made without mention of the particular testimony concerning fatigue, which Plaintiff here challenges.  (R. 514).  In any event, the decision here was based on a review of the whole of the record, with particular attention paid to the treating doctors who gave no indication that Plaintiff's fatigue was a constant or disabling condition.

Here, the ALJ's conclusion was not that Plaintiff did not complain about fatigue or that she did not suffer fatigue, but rather that the record did not support her complaints of disabling fatigue. In sum, apart from the opinion by Dr. Silverfield, discussed below, this record contains no findings or other opinion evidence by any treating or examining doctor that supports Plaintiff's testimony concerning the limiting effects of her fatigue. I conclude that the ALJ has adequately stated his reasons for discounting Plaintiff's subjective testimony on the basis of this record.

On her second claim, Plaintiff urges that the residual functional capacity (RFC) assessment was made contrary to the applicable standard and is unsupported by substantial evidence. The argument includes the complaint that the ALJ failed to consider the vocational demands of her past work as required at step four of the evaluation process. Insofar as the claim relates to her RFC, Plaintiff cites SSR 96-8p and urges that the ALJ must address the claimant's physical and mental functional capacities and explain in narrative form his conclusions. The ALJ must also consider all the duties of a claimant's past work and assess the claimant's capacity to perform such work. Here, the RFC assessed by the ALJ fails to address the limiting effects of Plaintiff's complaints of fatigue, pain, muscle weakness and joint inflammation which are otherwise supported by the opinion of her treating rheumatologist. Had the ALJ included limitations related to her symptoms, he would not have found Plaintiff capable of her past work, nor any other work. (Doc. 13 at 16-19).

In response, the Commissioner argues that Plaintiff fails to show either that the RFC assessment is unsupported by the medical evidence or that the ALJ failed to follow the applicable standard. As for Dr. Silverfield, the ALJ gave adequate reasons for discounting his

RFC assessment based on the lack of support within his own treatment notes and the other evidence of record reflecting her condition was stable with treatment. His findings were unsupported by objective findings in his notes and appeared to be based more on Plaintiff's subjective complaints. The finding that Plaintiff could not sit more than two hours a day is inconsistent with the fact that she did not allege a problem with sitting. Moreover, Plaintiff does not challenge the ALJ's findings concerning this opinion evidence nor demonstrate that such were erroneous. (Doc. 16 at 12-17).

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 416.945(a)(1); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Lewis*, 125 F.3d at 1440. If a claimant can still do the kind of work she has done in the past, then the regulations require that she be found not disabled. At this stage of the evaluation process, the burden is on the claimant to show that she can no longer perform her past relevant work. *Jackson v. Bowen*, 801 F.2d 1291, 1292 (11th Cir. 1986). In evaluating a claimant's residual functional capacity, the ALJ is obliged to consider all of the claimant's impairments, including subjective symptoms such as pain. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The final responsibility for deciding a claimant's RFC is with the ALJ. 20 C.F.R. §§ 404.1527(d), 416.927(d).

Here, I am unable to agree with Plaintiff that the ALJ failed to abide by the applicable standard at arriving at her RFC for a limited range of light exertional work. The decision reflects the ALJ's review of the whole of the record, including the medical opinion

11

evidence and Plaintiff's subjective testimony in arriving at the conclusion she had minimal

mental limitation and suffered physical limitations which restricted her to a reduced range of

light exertional work.  Contrary to Plaintiff's contention, the RFC reflects a function by

function assessment reflecting both physical and mental restrictions.  Her complaints that the

ALJ failed to consider the limiting effects of her fatigue, pain, muscle weakness and joint

inflammation and include (unspecified) limitations based on the same is simply not

demonstrated.  Indeed as noted above, the ALJ, after examining the medical record, concluded

that "[t]he debilitating fatigue, achiness, and weakness she alleges are not supported." (R.

514).  After my review of this lengthy record, I am obliged to conclude that the ALJ's finding

in this regard is supported by substantial evidence.  Plaintiff has suffered from SLE for many

years and unquestionably suffers fatigue and achiness.  However, she fails to demonstrate

limitations either revealed by or otherwise supported by the medical evidence which should

have been included in the RFC and were not.

   As for the assessment by Dr. Silverfield, Plaintiff's treating rheumatologist, in May

2010, he completed a Physical Residual Functional Capacity Questionnaire in which he

imposed physical and mental limitations which would preclude Plaintiff from all work.  ( R.

925-28A).  In this Circuit, when considering a treating physician's opinions, the ALJ must

ordinarily give substantial or considerable weight to such testimony unless good cause is

shown to the contrary.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir.

2011) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  Good cause for

rejecting a treating source's opinion may be found where the treating source's opinion was not

bolstered by the evidence, the evidence supported a contrary finding, or the treating source's

opinion was conclusory or inconsistent with his or her own medical record.  *Id.* (citing

*Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)).  Here, the ALJ found

inconsistency and a lack of medical support for this doctor's assessment and thus afforded it

little weight.  More particularly, the ALJ stated,

> Joel Silverfield, M.D. opined the claimant had numerous functional
> limitations and was unable to perform work on a full time and regular basis
> (Exhibits B-1F/154-159, B-20F). I give little weight to this assessment.
> Although Dr. Silverfield is one of the claimant's treating physicians, the
> severe functional limitations he notes are not supported by his progress
> notes or the other substantive evidence of record. Rather, his progress notes
> contain few detailed, objective findings. It appears the limitations Dr.
> Silverfield noted were based more on the claimant's subjective statements
> and less on the objective findings. For example, Dr. Silverfield noted the
> claimant suffered from depression and was incapable of even low stress
> jobs. However, the evidence shows only some situational depression related
> to life stressors. Generally, the claimant denied depression and, for the
> reasons previously described, this is not a severe impairment. Further, Dr.
> Silverfield stated the claimant could sit less than two hours a day, but the
> claimant did not allege any problems sitting. Moreover, the record
> repeatedly notes the claimant's conditions were stable with treatment.

(R. 515).  Plaintiff does not directly address this rationale for discounting Dr. Silverfield's

assessment apart from noting that the opinion should have been given precedence over the

opinion of the ME.  While I can agree in principle that the opinions of a treating doctor are

entitled to greater weight than the opinions of a nonexamining doctor, as the above statement

reflects, the ALJ's conclusion on the weight to be afforded Dr. Siverfield had little to do with

the opinion of the ME.  Instead, the ALJ discounted Dr. Silverfield's opinion based on the

lack of support in his own treatment notes for such severe limitations and because it was

inconsistent with the record as a whole.  I have reviewed the doctor's records and conclude

that such can clearly be read as not supporting the severe physical or mental limitations

imposed by this assessment.  In sum, the notes reflect long-term care, but few clinical findings

and restrictions.  And, as noted, Plaintiff wholly fails to demonstrate error in this finding.
Moreover, the record as a whole does not support the debilitating limitations assessed by this
doctor and once again, Plaintiff fails to demonstrate otherwise with any particulars.

The ALJ also gave two illustrations where findings by this doctor were contrary to
what Plaintiff claimed concerning sitting and depression.  Thus, by Plaintiff's account, sitting
was not an issue.  (R. 491).  And, contrary to Dr. Silverfield's assessment, the Plaintiff did not
demonstrate the severe limitations assessed with her mental limitations.  Instead, there are
numerous instances in the medical record where Plaintiff is noted to be doing well and stable.
In sum, under the applicable standard, even the opinion of a treating doctor may be
discounted.  Here, I conclude that the reasons offered for concluding that this assessment by
Dr. Silverfield be denied controlling weight are supported by the record and Plaintiff fails to
demonstrate otherwise.  Thus, insofar as Plaintiff urges that the assessment demonstrates error
in the ALJ's RFC, I cannot agree.

By this claim, Plaintiff also argues that the ALJ failed to consider the vocational
demands of her past work as required at step four.  The review at this step of the evaluation
process involves the assessment of a claimant's residual functional capacity and requires
consideration of the physical and mental demands of his former work.  In this regard, "the
ALJ has the duty to *fully* investigate and make *explicit* findings as to the physical and mental
demands of a claimant's past relevant work and to compare that with what the claimant
herself is capable of doing before he determines that she is able to perform her past relevant
work." *Nimick v. Sec'y of Health & Human Servs.*, 887 F.2d 864, 866 (8th Cir. 1989); *see
also Nelms v. Bowen*, 803 F.2d 1164, 1165 (11th Cir. 1986).  However, at this step, the burden

is still upon the Plaintiff to prove that he cannot do this past work. *Lucas v. Sullivan*, 918

F.2d 1567, 1571 (11th Cir. 1990) (citing *Cannon v. Bowen*, 858 F.2d 1541, 1544 (11th Cir.

1988); *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986)).

A determination that a claimant can perform her past relevant work, and thus is not

disabled, is appropriate where the claimant retains residual functional capacity to perform the

actual functional demands and job duties of a particular past job *or* the functional demands

and job duties of the occupation as generally required by employers throughout the national

economy. SSR 82-62, 1982 WL 31386, at *3 (S.S.A.);[6] SSR 82-61, 1982 WL 31387, at *2

(S.S.A.). Where it is determined that a claimant can perform her past job as she performed it,

the claimant's statements regarding past work are generally sufficient for determining the skill

level, exertional demands and nonexertional demands of such work. SSR 82-62 at *3; *see*

*also* SSR 82-61 at *2 (stating that a vocational report completed by the claimant may be

sufficient to furnish information about past work). And, where it is determined that a

claimant can perform a past job as it is usually performed in the national economy, an ALJ

may rely upon job descriptions set forth in the DOT. *See* SSR 82-61 at *2.

Here, the ALJ did a poor job of developing the record concerning the functional

demands of Plaintiff's past work in commercial real estate and as a leasing agent. The inquiry

at the first administrative hearing was limited and not particularly informative and at the

second hearing, it was nonexistent. *See* (R. 485, 1106-14). While there is evidence in the

administrative record wherein Plaintiff described such work, (R. 638, 640), the ALJ does not

---

[6]Social Security Rulings are binding on all aspects of the Social Security
Administration. *Hall v. Schweiker*, 660 F.2d 116, 119 n.4 (5th Cir. Unit A Sep. 1981).

reference it.  By my consideration, this undermines the ALJ's finding that Plaintiff could

perform her past work as she performed it.  Nonetheless, I find no cause to remand on this

claim because the ALJ also concluded that Plaintiff could perform the demands of this past

work as generally performed in the national economy, citing specifically to the Dictionary of

Occupational Titles (DOT) classifications 250.357-018 and 250.357-014.  (R. 515).  Such

conclusion is supported by the VE testimony, which the ALJ adopted.   (R. 673, 1114-16).

Thus, there is record support for this part of the ALJ's conclusion and no cause to remand on

this issue.

D.

For the foregoing reasons, the decision of the Commissioner of the United States

Social Security Administration is in accordance with the correct legal standards and is

otherwise supported by substantial evidence, and I recommend that it be affirmed.  I further

recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to

close the file.

Respectfully submitted this
31st day of December 2013.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.


Copies furnished to:
United States District Judge
Counsel of Record